# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| LYNTECH ENGINEERING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-CV-54 JVB |
| ) | |
| SPX CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On September 7, 2007, the Defendant, SPX Corporation, cancelled its Purchase Order issued to Plaintiff, Lyntech Engineering, Inc. Lyntech filed suit against SPX for fraud in the inducement, actual fraud, constructive fraud, and, in the alternative, for breach of contract and promissory estoppel. Lyntech contends that SPX made a material misrepresentation of a past or existing fact which it relied upon when entering into the contract.

SPX moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted for fraud in the inducement, actual fraud, and constructive fraud. Having reviewed the parties' briefs and accompanying materials, the Court grants in part and denies in part Defendant's motion to dismiss.

**A. Jurisdiction**

Plaintiff Lyntech is an Indiana corporation whose principal place of business is in Indiana. SPX is a Delaware corporation with its principal place of business in North

Carolina. The amount in controversy alleged in the Complaint exceeds $75,000. Accordingly, the Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1332.

B. **Factual and Procedural Background**

According to Lyntech's Complaint, on October 3, 2006, SPX issued Purchase Order No. 637095 to Lyntech to do certain machining work on parts for the 180L Program (Toyota Tundra parts). The Purchase Order indicates that Lyntech was to produce 1/3 of the total volume of the 180L Program. (Ex. 1.) Lyntech produced approximately 172,411 parts for the 180L Program from October 5, 2006, until September 7, 2007, when the Purchase Order was cancelled by SPX Plant Manager Tavid Markarian after SPX had decided to do the work itself. (Ex. 2.)

On March 2, 2009, Lyntech filed its five-count Complaint against SPX, alleging (I) fraud in the inducement, (II) actual fraud, (III) constructive fraud, and, in the alternative, (IV) breach of contract and (V) promissory estoppel. Counts I-III allege that SPX made a material misrepresentation of past or existing fact when it represented that Lyntech would produce 1/3 of the volume for the 180L Program per year for eight years and failed to inform Lyntech that the reverse side of the Purchase Order contained terms which allowed SPX to terminate the contract "for convenience" or change the quantity. (Compl. 5–6.) On April 24, 2009, SPX moved to dismiss Counts I-III for Lyntech's failure to show that SPX made a material misrepresentation of past or existing fact. SPX submitted a memorandum which contends that the alleged misrepresentation is merely a

promise of future performance and concerns only the scope of the existence of a contract. (Def. Mem. 2.)

In support of SPX's alleged material misrepresentation, Plaintiff states the following: From June 6, 2006, until October 3, 2006, SPX representatives, Forrest Asher (Engineering Manager) and Markarian, represented to Lyntech President and Owner Jason Hudkins that the written contract provided for Lyntech to machine 1/3 of the total volume of the 180L Program, which would be 133,333 pieces per year for the eight years of the program. (Compl. 3.) Asher was aware that Hudkins relied upon SPX's verbal commitment to produce 1/3 of the volume for the 180L Program for eight years and the Purchase Order to obtain bank financing for Lyntech to complete the project. (Compl. 4.) Hudkins then took the Purchase Order to the bank and obtained the necessary financing to purchase two CNC mills and a box truck. Lyntech paid approximately $182,000 for the two mills and $36,000 on the box truck, and, in reliance of the agreement, hired and trained three people. (Compl. 4.)

Lyntech also claims to have received only the front page of the Purchase Order issued by SPX on October 3, 2006. The front page contained the following statement:

> TERMS & CONDITIONS: This Purchase Order, which constitutes an offer, includes the terms and conditions on the front and reverse sides hereof. Please read them carefully. By shipping the Articles, or by acknowledging receipt of this order, or by performing the above work, you agree to such terms and conditions although you agreeing to such terms and conditions is not limited to the foregoing method.
>
> (Ex. 1 and 2.)

The reverse side, which allegedly allowed SPX to change quantities or terminate the contract at any time "for convenience," was not given to Lyntech. (Compl. 4–5.)

## C. Standard for Evaluating a Motion to Dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, a court must accept as true all the well-pleaded material facts in the pleading and must draw all reasonable inferences from those facts in the light most favorable to the pleader. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

While Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a claimant plead a "short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) embodies the exception to this otherwise lenient rule by requiring that fraud be pleaded with particularity. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 626-27 (7th Cir. 1999). The pleader must identify the person who made the misrepresentations, the time, place and content of the misrepresentation, and the method by which the misrepresentations were communicated to the complaining party. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). These requirements have been described as the "who, what, when, where, and how: the first paragraph of any newspaper story." *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## D. Discussion

In Counts I and II, Lyntech alleges that SPX falsely represented that the agreement was for Lyntech to machine 1/3 of the volume for the 180L Program per year

for eight years and failed to inform Lyntech of the reverse side of the Purchase Order. SPX argues that the alleged fraudulent statements either concern future acts and an unexecuted promise or are not shown false by the pleadings filed.

Under Indiana law, the elements of actual fraud and fraud in the inducement are: (1) a material misrepresentation of past or existing fact by the party to be charged, (2) which was false, (3) which was made with knowledge or reckless ignorance of the falseness, (4) which was relied upon by the complaining party, and (5) proximately caused the complaining party injury. *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996); *see also Circle Ctr. Dev. Co. v. Y/G Ind. L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002).

The Court considers as true all the well-pleaded material facts in the Complaint and draws all reasonable inferences from those facts in the light most favorable to Lyntech. Because the purpose of a 12(b)(6) motion is not to decide the merits of the case, but to test the sufficiency of the pleading, the Court finds that Lyntech provided sufficient facts, at this point, to prevail against SPX's motion to dismiss Counts I and II.

The Court next examines Count III to determine whether it states a claim for constructive fraud.[1] The elements of constructive fraud are: 1) a duty owing by the party being charged with fraud to the complaining party due to their relationship; 2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a result thereof; and 5) an advantage to the party being charged at the expense of the complaining party. *Rice*, 670 N.E.2d at 1284. Constructive fraud may be based on promissory misrepresentations as well. *See Romack v. Pub. Serv. Co. of Ind.,* 511 N.E.2d

---

[1] During an oral argument on July 21, 2009, Plaintiff conceded its claim against SPX for constructive fraud.

1024 (Ind. 1987) (adopting *Romack v. Pub. Serv. Co. of Ind.*, 499 N.E.2d 768, 776-80 at 778 (Conover, J., dissenting)).

The Court concludes that Lyntech has also failed to state a claim for constructive fraud. The relationship between Lyntech and SPX as described in Lyntech's pleading is simply that of parties to a contract. While a fiduciary relationship is not required, something more than an arm's length contractual relationship is. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000). In the case at bar, Lyntech alleges no facts to suggest the sort of relationship recognized by Indiana courts as supporting a claim for constructive fraud. *See, e.g., Yeager v. McManama,* 874 N.E.2d 629, 637 (Ind. Ct. App. 2007) (finding misrepresentations as to future conduct by developers and sole members of housing developments architectural review board charged with preserving and enhancing real estate values to prospective land purchasers); *Plohg v. NN Investors Life Ins. Co., Inc.,* 583 N.E.2d 1233, 1236-1237 (Ind.Ct.App.1992) (finding special relationship when insurance agent made erroneous statements to potential insureds regarding policy exclusions); *Wells v. Stone City Bank,* 691 N.E.2d 1246, 1251 (Ind.Ct.App.1998) (finding a special relationship and duty when bank misrepresented to checking account holder that it would, in the future, honor checks written on account).

Lyntech also fails to establish that SPX received an unconscionable advantage from the contract. *See Urbanski v. Tech Data*, 2008 WL 141574 at *5 (N.D. Ind. 2008) (holding that the additional costs incurred by the plaintiff, considering the significant benefit received, failed to establish an unconscionable advantage to the defendant) (citing *Romack*, 499 N.E.2d at 775). The Court does not recognize Plaintiff's payments for the two CNC mills, a box truck, and additional employee wages as an unconscionable

6

advantage to SPX. After all, Lyntech benefited by receiving compensation from SPX for producing 172,411 parts for the 180L Program from October 5, 2006, until September 7, 2007.

Accordingly, the Court dismisses Count III for failure to state a claim upon which relief can be granted for constructive fraud.

**E. Conclusion**

The Defendant's motion (DE 14) is granted in part and denied in part: the Court dismisses Count III and denies Defendant's motion to dismiss Counts I and II.

SO ORDERED on July 22, 2009.

 _s/Joseph S. Van Bokkelen_____
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
HAMMOND DIVISION